20-2961 and case number 20-3284 from the District of Western Missouri, John Burns et al. v. Brad Cole et al. and Greg, or Gary Clausing v. Brad Cole et al. Okay. Judges, can everyone see me? Yes, I think we can see both counsel and Mr. Graham, you may proceed. Very good. Thank you, Judge. May it please the court. Judge Kevin Graham appearing on behalf of seven separate plaintiffs who are each Christian County Sheriff's deputies, and each of which had their employment terminated following an election in August of 2015. Each of these individuals were Sheriff's deputies, each of them were involved in a supporting or running for office, running for office and or campaigning or helping someone run for office, when their candidate did not win. Each of them was either demoted or terminated. Most of them were terminated the very first hour that the new Sheriff, Sheriff Cole, took office. Each of them supported Sheriff Cole's opponent. Now, I'm going to start with Curtis v. Christian County. Curtis v. Christian County is a related case. It was decided by this court just over a year ago and involves almost identical fact pattern and two other deputies, which I also represented with Mr. Gregory. Just to start with, we are not seeking to overturn Curtis v. Christian County. Certainly, we would not be opposed to that, but we are not seeking to overturn it. That is not the brunt of our argument. But I do want to start with that case. That case has two primary propositions that I think are constructive to this case. Number one, that under 42 U.S.C. 1983 analysis, when you're dealing with a separation and employment case such as this, the court should look to the respective state's laws in analyzing whether or not qualified immunity should be given to the sheriff and whether or not the deputies have the right to exercise their First Amendment rights. What specifically do we look to state law for? Can you articulate? I understand it ultimately plays into the qualified immunity analysis, but how would you describe specifically under Curtis what we look to state law for? Well, I think under Curtis, when Curtis identifies, for example, I mean, let me ask you this. Do you think that state law determines whether there's qualified immunity or not? And do you think it's a factor that goes into our federal analysis of certainly believe it to be very close to that. I mean, the courts have said over and over again that that's what they're going to look at is state law. When we look at state law, what is it we're looking at for a deputy sheriff in Missouri or Arkansas or Minnesota? What is it when we look to state law that we are looking to, what question are we looking to answer? I think you're looking to answer what rights does state law, if any, give to employees? Well, do you have a site for that? What rights? Because I see sort of a, what role do the deputies play in the state system? Now, if it's what rights, it seems to me that may be a different analysis and I may have missed that, but I have not seen that language in a case. Now, it may be there. Well, so I would, I guess, send you to Curtis quoting Shotkinsy and referencing Shotkinsy. In Curtis quoting Shotkinsy, it says, in addition, Minnesota law prohibits public officials from using official authority or influence to compel employee participation in political activities. And then later on, there's another, the relevant Minnesota statutes were published and available to appellants and the legislature's intent not to permit retaliation for political reasons was clearly expressed. So if there are- Are there two different classes of employees in Minnesota, or can you remind me of that? Well, I think there is, in Minnesota, as I recall, there certainly are employees who have additional, what I would call, due process rights. So do we have that in Missouri? Well, I think we have at least three statutes that specifically- No, no, but do we have the two different classes of employees is my question. We don't have that in Missouri. Missouri doesn't have what I would call a civil service system, such as the federal government has, and it appears Minnesota has at least at some level. So if I can use the term civil service system, I don't think that- I think I understand, yeah. Yeah. So that's the starting point. Now, the second thing in Curtis that I think was essential, because obviously this is, my opponent will certainly suggest that Curtis just controls this and we should be done in three or four minutes. Curtis specifically says that they did not consider whether or not these, Mr. Curtis and Mr. Bruce were first responders and as such, whether they had the right to the protection of Missouri Statute 67.145. So those two points are the openings in Curtis that we're here to, in my opinion, we're here to talk about. And so because of that, I think in this case hinges on Missouri law, Missouri statutes. And there are- I don't know that this is relevant, but is there a cause of action for under Missouri state law for these terminations under your position? Absolutely. Absolutely. I think there are probably multiple avenues for causes of action under these state laws. One would be under Missouri's kind of general, what I would call wrongful termination, wrongful discharge statute. I think you could, and that's a court created a cause of action that's been kind of embodied in the last couple of years by the legislature, but also specifically one, I think it's 130.028 gives specific cause of action rights for this conduct. So are these deputies, can you really say they're first responders? Well, what I remember is in the record reference to some training that I guess all law enforcement officers receive in emergency techniques and aid, but I mean, are they, do you think they're really the kind of first responders that that footnote Curtis was talking about? Well, yeah, I guess I would say they're first responders in not, I guess I'm not looking at Curtis in the footnote as much as I'm looking at Missouri statute. Missouri statute says that first responders get this additional consideration, this additional protection and the statute specifically references sheriff's deputies. So counsel, why not sue in state court then? In other words, I mean, it seems to me the federal analysis is really about the role that deputy sheriffs play in Missouri. And Curtis answered that question, right? For federal purposes. Well, why am I wrong about that? Because Curtis didn't consider the Missouri law that was applicable to these cases. You simply didn't. They considered the role that deputy sheriffs play and I forget the language here. I'm not going to get it wrong, but it's policy making positions for which political loyalty is necessary. And Curtis found that to be the case, right? Yeah, only in the absence of additional Missouri law that does exist that was not considered. And that's why it becomes much closer to the Shotkinsey case than say the Nord case. So they are first responders. The record is full of evidence of them attending first responder training, of them getting certificates for being first responders, of them being additionally trained while they're sheriff's deputies. In addition to that, the Christian County Sheriff's Department policies, and again, we put them in the record in some volume, specifically require these deputies to engage in what I would call first responders type of activity in the conduct of their job. Judge Boo found that they were first responders and we believe that 67.145, which requires that a political subdivision cannot take an employment action against a first responder based upon their political activity. The second statute is 130.028, which also contains very specific prohibitions about what an employer can do in Missouri. And notably here is it does, in fact, as we discussed earlier, give a private cause of action, an additional cause of action, and it even includes criminal provisions. And then also in 130.028, it refers to persons are prohibited from taking actions against employees. 130.011 specifically defines persons to include political subdivisions or any officer or employee of such entity acting in the person's official capacity, which is exactly what we have here. So there's no doubt that 130.028 does, in fact, apply in this situation. The final statute is 115.637, which are election offenses in Missouri, which again makes it a crime for an employer to take an employment action against an employee based upon their involvement in a campaign or running for office or helping someone run for office. Counsel, a little off the track here. Have there been any criminal charges placed in Missouri? Yeah, I thought about that this morning. I don't want to tell you, I thought about that and I did not look at that. I don't know if that's the case. Again, they're two separate criminal offenses and statutes, both with the criminal provision. Of course, the irony here is that the person charged with investigating crimes has to at least be held to the minimum standard that the Missouri statutes have. These are crimes. They're not just a penumbra of rights about how we define them. Have your clients reported them to the appropriate authorities? Counsel, I withdraw that question. I don't think that's relevant. I respectfully, I agree with that. I don't know that. That's where we are. We've got the sheriff of the county who appears to be, at least the allegation is, violating two separate laws that could put him in jail. I respectfully suggest that that is more than enough to overcome any belief that he is entitled to qualified immunity. The fact that there are statutes, the earliest of which is from the mid-90s, all of which were in place at the time of his election, means that he absolutely knew what he was doing or is, I think, constructively put on notice that that's what he, the laws of Missouri are the laws he has to live by. Clearly, that is something that we allege didn't happen and we believe that the court absolutely needs to consider these three statutes, two of which are criminal, one of which specifically applies to first responders and deputy sheriffs, and that it is necessary for those statutes, when reviewing those statutes, then I think the outcome is that this matter should be reversed and sent back to Judge Boo. I see that I'm down to my under three minutes, so I'll leave it at that unless there are questions. Okay, I guess not. Mr. Napolitano, you may proceed. Thank you, your honor. Chris Napolitano on behalf of Appellees Brad Cole and Christian County, Missouri. Your honors, may it please the court. Cole was permitted to take adverse employment actions against them and did not violate their constitutional rights. That was this court's order, as Mr. Graham pointed out last year, and again, Mr. Graham pointed out the similarities in the cases. We're talking about the same circumstances giving rise to the Curtis and Missouri deputies, which this court has already determined is a position for which political loyalty can be required. The bottom line is that the court has already decided this very issue, and what plaintiffs fail to do in their brief and in their argument is demonstrate how the right that they now assert was clearly established in August of 2015 when Sheriff Cole made these decisions, when this court just last year determined the right didn't even exist at all. So the court cannot now, I know that Mr. Graham says he's not asking for reversal, but essentially it is because the first responder arguments were made in Curtis. These new additional arguments weren't. They were presented to the court in a petition for rehearing, but that's probably neither here nor there at this point, but the bottom line is the court has made this decision already, and Judge Kovas, you're absolutely right. The purpose for which courts look to state law under an Elrod Branty analysis is for the sole purpose of determining what the role of the position is. They don't go on a fishing expedition to see if there are any statutes, criminal or otherwise, that might implicate or have some ancillary impact on a position. It's what is the role. So are those really ancillary impacts or do the statutes that suggest that political decisions might be criminal, why don't those go to the fundamental role of the position, right? If you can't fire under state law a deputy sheriff or a political position, why doesn't that go to the role? Well, because it doesn't define the duties. It doesn't talk about the relationship between the sheriff and the deputies. Well, it does in a sense that politics should not be the defining character of that relationship, right? The employment relationship should not be determined on political persuasion under state law. I think that that is a general legislative pronouncement of a general policy in the state of Missouri, but it's not specific to sheriff's deputies. Are you suggesting it doesn't apply to sheriff's deputies? No, I don't think it does, your honor. Under Missouri law, you don't think someone could be prosecuted under the statutes that your opposing counsel is suggesting. And I'm not talking about your clients here. I'm talking about a hypothetical person who violated those statutes. You don't think they apply to deputy sheriffs? I don't, your honor. And I think that while there might be a technical, someone can certainly prosecute or try to prosecute, but I think you're going to run into first amendment problems. Especially when you consider the rights of some of the employers. For example, I think we point this out in our brief. If you read this statute as broadly as plaintiffs want you to read it, it applies to everybody, every employer who does business in the state of Missouri. So to the extent that there's a federal agency who has employees in Missouri that might be political appointees of the president, the president couldn't hire or fire them based on political... It's unconstitutional as applied in particular situations. I think that would be accurate, yes. But more importantly, and I want to get to this because the court in Curtis already looked at the role, as you pointed out, Judge, with respect to how Missouri law defines the role of deputy. And the first thing that the Curtis court noted was that sheriffs are elected. And that's important because as Curtis and Jenkins in the fourth circuit, which Curtis looked to acknowledge, the interplay between the electorate and the voters and the sheriff and his policies requires loyalty of the deputies because they're the ones who enact his policies, who enact the things that he ran on. And that's the reason that under Missouri law, sheriffs are empowered to assist... I'm sorry, sheriffs are empowered to appoint and terminate their deputies at will. They serve at the pleasure of the sheriff. They have all of the powers and can exercise all of the authority and duties prescribed by law that the sheriff can. They're not typical employees. They are agents. They are agents and alter egos that owe a duty of loyalty to their principal. And to your point about that last statute, your honor, that statute goes to employees. Can an employer terminate an employee? It does not in any way affect a principal's ability to select their agents. And finally, the court determined that sheriffs are liable for their deputies' actions. And for all of those reasons, the Curtis court determined that so long as it was undisputed that the deputies holding the positions were actually sworn to engage in law enforcement activities, which is undisputed in this case with respect to appellants, then that position is one that requires political loyalty and COLE can terminate them without violating their rights. Now, as appellants point out, they want this court to look instead of Curtis, which is the most on-point case possible to shock and see because of these two new statutes that they bring forward. And I would point out section 130.028 was not raised before the district court. That was raised first time on appeal, which we did point out in our brief. But those statutes do not change the analysis. And Curtis distinguished shock and see for the same reason this court should. And it did so for two reasons. The first, and I believe the most important, is because, as you pointed out, Judge, in Minnesota, there is a civil service system and there are two categories of employees, classified and unclassified. Classified require cause for termination. And there is a specific statute within that statutory scheme dealing with I'm paraphrasing, you can't be compelled or classified employee cannot be compelled to engage or support a political candidate. Now, appellants want you to look to the other statute in shock and see to say that's similar to the statutes here, general election offenses, but it's not. And for one critical reason, the statute that is contained within the classified structure specifically references and incorporates the obligations of that other statute. So for that reason alone, the statutes in shock and see are not akin to the statutes here in Missouri. And there is no reason why this court should reverse itself and change the decision of Curtis, which clearly analyzed the role of a sheriff deputy under Missouri law and concluded it is a position for which political loyalty can be required. And for that reason, Your Honor, we would ask that the court confirm summary judgment. Counsel, a question for you. In the Curtis opinion, in the footnote that has reference to the first responder statute, the court there said that the record in that case didn't include evidence as to whether, I may be misquoting it, but the record did not include proof or evidence with respect to whether the deputy sheriffs here Curtis and Burns, in that case, were first responders or had been trained as first responders so that they would satisfy the definition of the statute. And so my question is, what about the record in this case? Is it different in that respect from the record in Curtis or is it the same absence of evidence? I think that it is a different record to be sure because Curtis came down while we were still doing discovery in these other seven cases, so they kind of had an opportunity to, I guess, a redo, so to speak. And so they do submit a bunch of additional evidence, mostly policies from Joey Kyle, which don't bind a new sheriff, by the way, how to use a taser, bloodborne pathogen, things like that. And then they also, some of their own affidavits. But the thing I would point out is the footnote indicates initially that Missouri law setting forth the political activity rights of first responders does not alter analysis. And then they go on to say, oh, by the way, they didn't even demonstrate that they were first responders. And I think that's the court's way of acknowledging the argument. And because they don't even have to deal with it, they're dismissive of it in a footnote. But the one thing that I would point out is 67145, excuse me, defines first responders. And there are two elements to that definition. The first of which is that you are trained to perform medical assistance or treatment, whatever that means. I'm not sure if that requires a medical degree or a license, or if it could be a good Samaritan. I have no idea what that means. But the second aspect of that is that they're authorized by rule or law to provide medical assistance and treatment. The only evidence in the record, as far as I can tell, and what Judge Boo I think put in his clossing opinion or decision, was that they were authorized or that the sheriffs, including Cole, expected their deputies to perform first aid. But nothing in medical assistance or treatment. So I don't even think that as a matter of law, he can authorize them to do that. I think if you read the deposition testimony of Sheriff Cole, his point was, I would expect my guys to do what they can if they're comfortable doing it. It wasn't anything that a rule or a law that said, yes, you have to, or yes, you are authorized to. And what's more important and kind of ironic to the argument is that Keith Mills testified, and that is in the I don't trust you. You're not authorized to perform medical assistance or treatment. So the reality of their argument is Sheriff Cole has the unilateral authority to make them a first responder or not make them a first responder. So it's kind of a ridiculous argument to say Sheriff Cole is bound by the statute, which he alone determines if it applies or not. Does that answer your question, Judge? Well, I understand your answer. Let's put it that way. Okay. All right. Can I make one other point, Your Honor, about the first responder statute? Sure. You've got almost four minutes. We make this argument in our brief, but I think it's the best argument, frankly, as to why the first responder statute doesn't apply. And that's because Cole is not a political subdivision. That statute specifically says that no political subdivision of this state shall prohibit any first responder, and then it goes on. But the definition of political subdivision contained within Chapter 67 requires that the political subdivision be authorized to levy taxes. Sheriff Cole, as a sheriff of Missouri, is not authorized to levy taxes. They could have, the legislature put in the language, any political subdivision or official thereof to include a sheriff in the category of people whose conduct is proscribed. Rather, a sheriff is in the potentially protected category. So Chapter 67 stops a county commission, in this case, from prohibiting political conduct. Not the sheriff to prohibit his agents. Thank you, Your Honor. Thank you. All right. Mr. Graham? Yes. I think I'm back up. I think you have two minutes and 40 seconds. You may proceed. Thank you, Judge. I do want to raise a couple of things. One thing I want to talk about is on the brief that we were dealing with from the defendants. It is full. There are seven cases here, and they are complicated in the sense that there are seven different records. But I want to make sure that it's understood that there's substantial parts of this brief submitted by defendants that argue evidence that's not in the record. On reasons that multiple deputies were terminated about their performance, none of that was in the record. These summary judgment motions were very simple and very discreet. Summary judgment should be issued based on that. Four of the seven had the exact same 10 statements of fact that had nothing to do with their performance, nothing to do with their training. It just essentially set up that they were attempting to follow Curtis v. Christian County and that case controlled. So there's a lot of evidence and a lot of the record is consumed with information that's simply not part of the record, was never put in front of Judge Boo. We never had a chance to respond to and certainly shouldn't be considered. Other than that, again, I would take some, I disagree. Again, we're not asking that Curtis be overturned. We think Curtis left open several points that need to be resolved. To the argument about the footnote, I do not think the footnote says that 67.145 does not apply regardless of whether they've been established as their first responders. I think the footnote says we're not considering 67.145 because there wasn't sufficient evidence of being first responders. We disagree with that result but we also believe that that's what it says. And to the question about the number or the amount of evidence establishing that they're first responders, it is voluminous. We did take our cues from the circuit while we were still in discovery and we beefed up that part of the record by hundreds of pages. There is a lot of evidence there regarding that they are first responders and that they are in the political subdivision question. They're employees of Christian County and that's what that statute is intended to give them safe harbor. I see that I'm out of time. Unless there are any questions, I appreciate everyone's time today. All right. Thank you, counsel. The case is submitted and we will strive to render a decision in due course. At this point, we're halfway through our schedule this afternoon and we will take a 10-minute recess. Thank you.  All right. Ms. McKee, are we ready to resume? We are, your honor. All right. Please call the next case. Case number 20-3239.